UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LESHURN HUNT (N-42562), | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07 C 4733 |
| SCOTT THOMAS, ANDY ULLOA, and PAUL RATZBURG, | ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leshurn Hunt is incarcerated at the Pinckneyville Correctional Center. In August 2007, he filed this lawsuit under 42 U.S.C. § 1983 against Waukegan Detectives Scott Thomas and Andy Ulloa and against Pleasant Prairie, Wisconsin Officer Paul Ratzburg. Plaintiff's claims arise from his arrest on armed robbery charges in June 2006, the related interrogation, and the search of his home. Read in the light most favorable to Plaintiff, his complaint alleges that (1) Defendant Thomas used excessive force while interrogating Plaintiff; (2) Defendants Thomas and Ratzburg searched his home without a warrant or consent; (3) Defendant Ratzburg charged Plaintiff with armed robbery, though there was insufficient evidence to support those charges; and (4) Defendants acted with deliberate indifference to Plaintiff's injuries.

Defendants Thomas and Ulloa have filed a motion to dismiss the excessive force and deliberate indifference claims. They have also filed a motion for summary judgment, arguing that rulings in Plaintiff's state criminal case bar his claims under the principle of collateral estoppel. Defendant Ratzburg also seeks summary judgment. Plaintiff received the appropriate notice to *pro se* litigants and has responded to these motions. For the reasons explained here, the motion to dismiss is granted, and the motions for summary judgment are granted in part and denied in part. All claims against Defendant Ulloa are dismissed, and the claims of deliberate indifference to a serious medical need, false arrest, and excessive force by Defendant Ratzburg are dismissed. The only claims that remain are Plaintiff's claims that Defendant Thomas used excessive force and that Thomas

and Ratzburg conducted an illegal search of Plaintiff's residence. The court invites Defendants Thomas and Ratzburg to file renewed summary judgment motions addressing the unresolved issues addressed in this opinion.

## **FACTS**

**Allegations of the Complaint**

For purposes of Defendants Thomas and Ulloa's motion to dismiss, the well-pleaded facts of Plaintiff's complaint are presumed true. In that complaint, Plaintiff describes the circumstances of his arrest and interrogation in June 2006 in some detail. He alleges that on June 27, 2006, three officers arrested him at his home in Waukegan, Illinois. (Compl. at 6.) At the police station, Waukegan Officer Scott Thomas began interviewing Plaintiff about two armed robberies, one in Waukegan, and the other in Pleasant Prairie, Wisconsin. (*Id.* at 7.) Plaintiff stated he knew nothing about the armed robberies and asked to speak to a lawyer. (*Id.*) Officer Thomas left the room but returned with a form setting forth Plaintiff's *Miranda* rights, which Plaintiff read and signed. (*Id.*) Thomas questioned Plaintiff again about the robberies; Plaintiff again asked to call his lawyer or a family member, and Thomas responded by calling Plaintiff a "f----ing liar" and by striking Plaintiff with his right hand. (*Id.* at 8.) According to Plaintiff, Thomas punched Plaintiff in the forehead, causing him to fall from the chair to the floor. Thomas then left the room, and Plaintiff remained on the floor and fell asleep until Thomas returned, kicked Plaintiff's foot, ordered him to get up from the floor, placed him in handcuffs "for a minute or two," and then escorted him to a "booking jail cell." (*Id.*) Plaintiff asked another officer for permission to call a lawyer, but was again refused.

Later that day, or the following day, Thomas took Plaintiff from the jail cell back to the interview room and began questioning him again about an armed robbery in Waukegan. (*Id.*) Thomas told Plaintiff he had a video recording (presumably purported evidence of Plaintiff's guilt), but Plaintiff insisted he knew nothing about the robbery and wanted to call a lawyer. (*Id.* at 9.) Thomas again began striking Plaintiff with the palm of his fist and hands, striking both sides of his face and "chok[ing]

2

[him] up against the wall lifting [his] body up and throwing [him] to the floor (rug) and kicking [him]" on his legs and other body parts. (*Id.*) Thomas placed a knee on Plaintiff's "butt area" and pinned him to the ground with his left arm behind his back. (*Id.*) When Defendant Ulloa entered the interview room (Plaintiff recalls that this took place on June 28) and directed Thomas to "chill out," Thomas stopped beating Plaintiff. (*Id.*) Ulloa effectively acknowledged that Plaintiff had been beaten: he encouraged Plaintiff to be a "big guy" and to "shake it off," as he would in a football game. Ulloa offered to become involved in the case and, when Thomas again hit Plaintiff in the face, Ulloa asked Thomas to step out of the interview room. (*Id.*) Ulloa told Plaintiff that Plaintiff's sister, Sergeant Charlie Burleson, was "one of us" (that is, a police officer), that she was outside the interview room, crying, and that she hoped that Plaintiff would cooperate by telling Ulloa "what happen[ed]." (*Id.*) If Plaintiff would do so, Ulloa promised to speak up for Plaintiff and "say something in [Plaintiff's] favor," with the result that he would face a sentence of just three years. (*Id.* at 10.) As Ulloa began to question Plaintiff about the Waukegan robbery, Ulloa placed one of his arms on Plaintiff's right shoulder, patting it, and urging Plaintiff, "[T]ell me, tell me, talk to me." (*Id.*) Plaintiff again asked for a lawyer, but Ulloa refused his request. (*Id.*)

Plaintiff alleges that, while he was at the Waukegan police station on June 27 or 28, Defendant Thomas and Defendant Ratzburg went to Plaintiff's house and searched it without a warrant and without obtaining consent from Plaintiff's wife. (*Id.*) Thomas and Ratzburg then returned to the police station and entered the interrogation room, where Detective Ratzburg yelled at Plaintiff and threatened him. (*Id.* at 11.) As Ratzburg left the room, Plaintiff heard him tell Defendant Thomas that he did not have enough evidence to charge Plaintiff with armed robbery. (*Id.*) Thomas responded by assuring Ratzburg that Thomas would "take care of it." Plaintiff learned three weeks later that he was being charged with an offense in Pleasant Prairie, Wisconsin. (*Id.*)

At some point on June 28, evidently as a result of Plaintiff's sister's efforts, Plaintiff was allowed to make a phone call. (*Id.* at 11, 12.) He also filed a complaint against Detectives Thomas and Ulloa,

3

gave a statement about the events during his interrogation, and was photographed. Some months later, that complaint was dismissed. (*Id.* at 11, 12.)

**Summary Judgment Record**

    **A.    Record of Criminal Proceeding**

As noted, Plaintiff's allegations are presumed true for purposes of the motion to dismiss. Defendants have also moved for summary judgment, and for purposes of those motions, the court is free to consider "discovery and disclosure materials on file and any affidavits" in determining whether there are any genuine issues of material fact. FED. R. CIV. P. 56(c). In this case, the material before the court includes portions of the record of Plaintiff's criminal prosecution for armed robbery in the Circuit Court of Lake County, Illinois. In that case, Plaintiff moved to suppress the fruits of the arrest on the ground that it was not supported by probable cause, and to suppress statements by Plaintiff allegedly obtained as a result of excessive force. (Motion to Suppress Statements, and Motion to Suppress Evidence, Exs. B and C to Defs. Thomas and Ulloa Statement of Material Facts in Supp. of Mot. for Summ. J. (hereinafter, "Def.'s 56.1").)

        **1.    Plaintiff's Testimony**

At a hearing before Judge Fred Foreman of the Circuit Court of Lake County, Plaintiff testified consistently with the allegations of his complaint: On June 27, 2006, he was arrested and taken from his home to the Waukegan Police Department, where he was placed in an interrogation room. (Tr. of June 13, 2007 at 2-5, Ex. D to Def.'s 56.1.) Detective Thomas entered the room and, a short time later, stepped out and returned with a written *Miranda* notice, which Plaintiff read and signed. (*Id.* at 8, 11.) Plaintiff denied involvement in the robbery, and Thomas became agitated. (*Id.* at 12.) Thomas approached him, called him an "f-ing liar," an "asshole," "stupid" and a "liar," and ultimately "balled his [right] fist up and hit [Plaintiff] with the palm of his hand and slapped [him] dead . . . on [his] left side and knocked [him] straight clear over into the corner of the wall." (*Id.* at 12, 13.) Plaintiff fell to the floor and remained there until Thomas ordered him to return to the chair. (*Id.* at 13.) Plaintiff testified

4

that Thomas used force against him several times, handcuffed Plaintiff briefly while Thomas stepped out of the room, and then returned, removed the handcuffs, and continued to demand that Plaintiff tell him what had happened. (*Id.* at 13-15.) Plaintiff testified that at least twice, he asked to call his attorney, but Thomas refused. (*Id.* at 16.) Some time later, Officer Paul Ratzburg joined Thomas and began angrily asking questions, as well, though Ratzburg "never touched [Plaintiff] at any time." (*Id.* at 17-18, 22-23.) Plaintiff recalled that he fell asleep twice during the interrogation and that Detective Thomas kicked him to wake him. (*Id.* at 21.)

Plaintiff remained in custody overnight. Thomas returned him to the interrogation room on June 28 and resumed questioning him. Plaintiff continued to deny involvement in the robberies. (*Id.* at 26-28.) Thomas again assaulted Plaintiff, as he "started choking [Plaintiff], threw [him] to the floor, started beating [him] with is fists, [and] kicking [him] . . . ." (*Id.* at 29.) As Thomas assaulted Plaintiff with his foot and his body, and struck Plaintiff on the left side of his face, Plaintiff began to yell. (*Id.*) At this point, Officer Ulloa entered the room and told Thomas to "cool down." (*Id.* at 30.) Ulloa asked Plaintiff whether he had ever played football and when Plaintiff replied, "Yeah," Ulloa said, "Come on, so you could take it. Be a big guy. You have been hit harder than that before, haven't you?" (*Id.* at 32.) Plaintiff testified that Ulloa himself "never hit [Plaintiff] at any time." His only physical contact with Plaintiff was placing hands on his shoulder and "punching [him] back and forth saying, 'Tell me, tell me, talk to me, tell me'"; Plaintiff characterized this as "normal physical contact. It was not anything harsh." (*Id.* at 33-34.) Like the other detectives, Defendant Ulloa refused to permit Plaintiff to make a phone call. (*Id.* at 33.)

During the two days of interrogation, Plaintiff claims he asked to make a phone call "at least probably like about eight times." (*Id.* at 25.) There was some discussion of Plaintiff's sister's presence outside the interrogation room; Plaintiff recalls that he brought this up, and the officers told him that his sister was crying and wanted him to confess. (*Id..* at 71.) Describing his injuries, Plaintiff stated that he was kicked in his legs, his arm was twisted, his shoulder and back were injured, and his eye

5

had been hit. (*Id.* at p.36.) He cried, he felt dizzy, he was "very much" in pain, and he felt a "knot" on the side of his head. (*Id.* at 35, 37.) He claims he still has scars on his shoulder and a burn mark on his back. (*Id.* at 36.)

### 2. Thomas's Testimony

Officer Scott Thomas also testified at the suppression hearing. His account of the June 2006 events was quite different from Plaintiff's. Thomas testified that on June 26, 2006, he was investigating an armed robbery in Waukegan, Illinois. (Tr. of Jan. 10, 2007 at 7, Ex. C to Def.'s 56.1.) The victim of the robbery described the assailant as a black male with a mustache, wearing sunglasses, a black hoodie, and jeans, and using a gun with duct tape around the barrel. (*Id.* at 8.) The robber pointed the gun at the victim, ordered her to the back of the store, directed her to lie on the floor, and walked around the store and stole cash. (*Id.* at 8-9.) The following day, Thomas learned of a similar robbery in Pleasant Prairie, Wisconsin, that had occurred several hours after the Waukegan robbery. A teletype dispatch describing the Pleasant Prairie robbery revealed that the victim of that robbery gave a similar description of the assailant and the weapon, and the license plate of the car driven by the offender in that case was linked to Plaintiff Leshurn Hunt. (*Id.* at 9-10.) Officers arrested Plaintiff and brought him to the Waukegan station, where Thomas met him in the interview room. (*Id.* at 10.)

Thomas read Plaintiff his rights; Plaintiff acknowledged that he understood them orally and by signing a written form. (*Id.* at 14-18.) Thomas spoke to Plaintiff in a conversational tone. Plaintiff did not complain of any injury or illness, and although he did say he was tired, responded cooperatively to Thomas's questions. (*Id.* at 19-21.) Thomas made no threats or promises to Plaintiff, and Plaintiff never asked for an attorney. (*Id.* at 21-22.) Thomas testified that he did not raise his voice, pound on the table, or brandish a weapon. (*Id.* at 23.) After Lieutenant Ratzburg arrived, Thomas left the room and met with him for a few minutes. (*Id.* at 25.) Thomas and Ratzburg then returned to the interview room where he found Plaintiff lying on the floor, awake. (*Id.* at 26.) The interview continued

6

cooperatively for 15 minutes to a half hour, at which point Thomas and Ratzburg left and went to Plaintiff's home, conducting a search there with Plaintiff's wife's consent. (*Id.* at 28-30.) After the search, Thomas and Ratzburg returned to the police station and found Plaintiff again lying on the floor. Plaintiff did not complain of any injury, did not ask for an attorney, did not ask to be taken to court, and did not ask that the interview be terminated. (*Id.* at 32.) After a half hour of further questions, at about 6:45 p.m., Thomas and Ratzburg left the interview room. (*Id.* at 33.) At 7:30 p.m., Thomas returned for two more hours of questioning. Plaintiff declined several offers of food and drink, had no physical injuries, did not ask for an attorney, and did not ask to terminate the interview. (*Id.* at 34-35.) Plaintiff mentioned his sister, and Thomas offered to invite Plaintiff's sister to come to the police station and sit in the interview room; Plaintiff declined the offer. (*Id.* at 36, 92.) Thomas denied telling Plaintiff that his sister was outside the interview room, crying. (*Id.* at 92.) Thomas claims he did not strike, choke, or punch Plaintiff, nor did he throw him to the floor, and Thomas did not observe anyone else take such action, either. (*Id.* at 37.)

Thomas met with Plaintiff again the following day, June 28. (*Id.* at 38.) Plaintiff was offered a meal but did not eat it. He did not complain of illness or injury, but his demeanor had changed in that he kept his head down, did not make eye contact, and did not answer many questions. (*Id* at 39-40.) Plaintiff maintained that demeanor throughout the day; his tone of voice did not change, and he did not get angry, yell, or scream, nor did Thomas raise his voice, strike, or choke Plaintiff. (*Id.* at 40-41, 101.) Plaintiff raised his voice only once: after viewing photographs taken of the assailant by a surveillance camera near one of the crime scenes, Plaintiff "stuck his hands out and said: Just take me to jail. You got me on video." (*Id.* at 40-41.) Plaintiff did not ask to terminate the interview and did not ask for an attorney. (*Id.* at 44.) Thomas acknowledged that he refused Plaintiff's request for a phone call, explaining that he did so to ensure that the search for the robbery weapon was not compromised. (*Id.* at 42-44.) Thomas testified that he touched Plaintiff only when Plaintiff "kept putting his hands out saying, 'Take me to jail. Go ahead, lock me up,' and [Thomas] pushed his hands

7

down." (*Id.* at 78, 104-05.) As Thomas led Plaintiff from the interview room to the booking room, Plaintiff did not make any outcry or statements concerning abuse. (*Id.* at 44-45.)

That afternoon, Thomas again met with Plaintiff in the interview room, joined a few minutes later by Detective Ulloa. (*Id.* at 46-48.) Neither Thomas nor Ulloa struck Plaintiff or made any threats or promises to him. (*Id.* at 48-49.) Ulloa remained in the interview room with Plaintiff for a few minutes after Thomas left the room; when Thomas returned, he did not observe any injuries, nor did Plaintiff complain of any injuries. (*Id.* at 49-50.) Later, after a conversation with the State's Attorney, Thomas informed Plaintiff of the charges against him and escorted him to the booking room. He had no further conversations with Plaintiff. (*Id.* at 51-52.)

### 3. Ratzburg's Testimony

Lieutenant Ratzburg also testified. Ratzburg has been employed as a police officer in Pleasant Prairie, Wisconsin for 23 years. (*Id.* at 107-08.) He testified that on June 26, 2006, the victims of an armed robbery in Pleasant Prairie provided a description of the offender as a black male of medium build, with facial hair, wearing a black zipped hooded sweatshirt. (*Id.* at 108-110.) Another witness provided a license plate number that turned out to be registered to Plaintiff. (*Id.* at 111-112.) Ratzburg traveled from Pleasant Prairie to the Waukegan police station, where he met with Detective Thomas and Plaintiff in the interview room. (*Id.* at 114-115.) Plaintiff made no complaints about abuse by Thomas, nor did Ratzburg observe Thomas touching Plaintiff. (*Id.* at 115.) Plaintiff did not ask to speak to an attorney, nor did he ask to be taken to court or to terminate the interview. (*Id.* at 116, 119.) According to Ratzburg, neither he nor Thomas raised his voice, nor did Plaintiff. (*Id.* at 117-118.) Plaintiff displayed some anger and frustration, but he did not complain of illness or fatigue, and he declined offers of food. (*Id.* at 118.) Neither Ratzburg nor Thomas made any promises or threats, nor did either of them tell Plaintiff that his sister wanted him to confess. (*Id.* at 119.) When Ratzburg and Thomas returned to the interview room after a search of Plaintiff's home, they found him sleeping on the floor and woke him by making noise, not by any physical contact. (*Id.* at 121.) Ratzburg testified

8

that no one threatened Plaintiff, punched, choked, or made other physical contact, nor were any racial slurs uttered. (*Id.* at 122-123; 134-135.) In the fifteen-minute interview at this point, Plaintiff answered some questions, but avoided answering others; he did not ask for an attorney. (*Id.* at 124.)

### 4. Ulloa's Testimony

Officer Andy Ulloa testified that on June 28, 2006, he was working at his desk at the Waukegan Police Station while Thomas interrogated Plaintiff in a room only a few feet away. (*Id.* at 137, 164-165.) Ulloa heard no loud noises, nor did he hear the sound of furniture toppling during the interrogation. (*Id.* at 141.) Some time later, Ulloa entered the room and had a one-on-one conversation with Plaintiff; in this conversation, Plaintiff did not complain of any injuries, nor did Ulloa observe any, and Ulloa himself did not strike, punch, or kick Plaintiff. (*Id.* at 143-145.) Plaintiff answered Ulloa's questions about his personal life calmly. Ulloa did not threaten Plaintiff, raise his voice, tell Plaintiff anything about his sister, or make any promises to him. (*Id.* at 146-147, 162, 163-164.) The only time that Ulloa made any physical contact with Plaintiff was when he put his hand and arm on Plaintiff's back to comfort Plaintiff when he began crying. (*Id.* at 148, 160.) He testified that Plaintiff did not ask for a lawyer. (*Id.* at 160.)

### 5. Judge Foreman's Ruling

Following the pretrial hearing, Lake County Circuit Court Judge Fred Foreman, in an oral ruling addressed the issue of probable cause for the arrest, the allegations of excessive force during the interrogation, and the search of Plaintiff's residence. Judge Foreman found that there was probable cause; that Plaintiff's testimony and assertions of physical abuse were not credible; that Plaintiff's statements were voluntary; and that the search of Plaintiff's house was consensual. (Tr. of June 15, 2007 at 4-15, Ex. E to Def.'s 56.1.)

With respect to probable cause, Judge Foreman noted that Waukegan Police Officer Thomas had received information concerning an armed robbery in Waukegan at 2:30 p.m. on June 26, 2008. Thomas learned, during the course of the investigation, that a store in nearby Pleasant Prairie,

Wisconsin had been robbed a few hours later by a man who fit the description of the Waukegan robber. The Pleasant Prairie robber drove a car with a license plate registered to Plaintiff. The information available to the officers, from both the Waukegan and Pleasant Prairie investigations, supported probable cause for Plaintiff's arrest. (*Id.* at 5-8.)

With respect to Plaintiff's claim that his confession was coerced by physical abuse, Judge Foreman began by stating the standard for determining the voluntariness of a confession: whether the prosecution demonstrated by a preponderance of the evidence that a confession was voluntary, after considering the totality of circumstances surrounding the confession, "including [Plaintiff's] age, intelligence, education, and experience, and physical condition at the time of the interrogation, the duration of the interrogation, the presence of *Miranda* warnings, the presence of any mental or physical abuse and the legality and duration of detention." (*Id.* at 8-9.) Judge Foreman noted that the interrogation lasted for 12 hours over two days; the longest period of questioning was 2 hours; Plaintiff was offered food and water; and he was allowed to sleep. (*Id.* at 12.) Addressing Plaintiff's contentions that he was struck in the face and kicked by Officer Thomas, Judge Foreman observed that photographs of Plaintiff showed some "marks and possible abrasions," but nevertheless concluded that Plaintiff's testimony was not credible and that the officers' was. (*Id.* at 12-13.) "The extent of the injuries testified to by [Plaintiff] was not borne out by the photos that were presented before the Court. And the Court has had the opportunity to review those photos and observe [Plaintiff] testify and frankly I don't find that testimony to be credible. I do find the officer's testimony to be credible." (*Id.* at 13.) Judge Foreman found "most telling" the fact that Plaintiff "was aware of the fact that his sister was a Waukegan police officer and was available. And Officer Thomas in the transcript of the testimony offered to have Lou, the defendant's sister, to be present if the defendant wanted to talk with his sister. The defendant rejected that. And I believe if the defendant was being abused at that time he certainly would have confided in his sister as to what was going on and requested that she take some sort of action." (*Id.* at 14.) Judge Foreman also stated, in his oral ruling, that Thomas and Ratzburg had

gone to Plaintiff's residence "and there was a consent to search by [Plaintiff]'s wife." (*Id.* at 10.)

Plaintiff was convicted of armed robbery and, on October 27, 2007, sentenced to 29 years' imprisonment. (State Ct. Judgment, Ex. A to Def.'s 56.1.) An appeal from that conviction is pending, and armed robbery charges are pending in Wisconsin, as well. (Ratzburg's Mem. of Law on *Heck v. Humphrey* at 1 n.1.)

### B. Plaintiff's Additional Evidence

In response to Ratzburg's motion for summary judgment (labeled as Plaintiff's cross-motion for summary judgment), Plaintiff submitted a letter from his sister, Charlie Burleson, and an affidavit from his wife, Sonya Hunt. In her letter, Plaintiff's sister asserts that a commander in the detective bureau "was aware that you didn't get a phone call," and that after she (Ms. Burleson) "called there, he was ordered to allow you a phone call." She also asserts that "the individual who beat [Plaintiff] has done this before" and had received only "minor discipline." (Letter of Charlie Burleson, Ex. A to Pl.'s Cross-Motion [81].) Plaintiff's wife's affidavit states that she refused entry to her home without a warrant, and that Thomas nevertheless entered and searched the house, without consent, while Detective Ratzburg questioned her. (Affidavit, Ex. B to Pl.'s Cross-Motion [81].)

In his response to Thomas and Ulloa's summary judgment motion, Plaintiff submitted a copy of what purports to be an interoffice memorandum from a detective to a sergeant concerning Plaintiff's June 29, 2006 bond hearing. The writer of the memo reports that he and another officer transported Plaintiff to court; that Plaintiff's attorney asked the judge to make note of marks on Plaintiff's face around the eye and forehead; and the judge observed that she did not see any marks but that Plaintiff's criminal defense counsel could ask for a court order to permit Plaintiff to be examined at the jail. (InterOffice Memo, Ex. A to Pl.'s Cross-Motion [55].) Plaintiff also attached a copy of an internal complaint he filed on June 28, 2006, asserting that Thomas had hit him several times during the two-day interrogation, had thrown Plaintiff up against a wall, and had pinned him to the floor. The officer who wrote up the complaint noted that there appeared to be some "slight swelling" of Plaintiff's right

11

cheek and "slight redness" on Plaintiff's forehead. (Waukegan Police Dep't Compl. Control Form, 6/28/06, Ex. F to Pl.'s Cross-Motion [55].)

Plaintiff has also submitted two physician reports from June and October 2007. In the reports, a doctor states that Plaintiff "has contused his left shoulder and now has a frozen shoulder." Plaintiff indicated to the physician that the injury occurred during an altercation with an officer when the officer drove Plaintiff's shoulder into the ground while his arm was behind his back. (Pl.'s Notice of Filing to Add Med. Docs. [76] at 3, 4.)

## **DISCUSSION**

Read in the light most favorable to Plaintiff, his complaint asserts the following claims: (1) Defendant Thomas used excessive force during the interrogation; (2) Defendants Ulloa and Ratzburg used improper methods during the interrogation; and (3) Defendants Thomas and Ratzburg searched Plaintiff's house without consent or a warrant. Although his complaint is less than explicit about any other claims, he has suggested, in addition, (4) that Defendant Ratzburg charged Plaintiff with an offense which Ratzburg himself did not believe was supported by probable cause,[1] and (5) that Defendants were deliberately indifferent to a serious medical need. The court addresses these claims in turn, beginning with the possibly asserted false arrest and deliberate indifference claims.

---

[1] On initial review, the court believed Plaintiff challenged the basis for his arrest in Waukegan, as well. A closer reading demonstrates his challenge is limited to the Pleasant Prairie, Wisconsin charges, but the court will address both charges here.

**False Arrest**

Charges relating to the incident in Pleasant Prairie, Wisconsin remain pending. Plaintiff has argued that Officer Ratzburg lacked probable cause for his arrest on those charges. The court notes that a witness in Wisconsin gave the police a license plate number registered to Plaintiff, and that he apparently matched the physical description given by the victim. The court need not reach the merits of this claim, however; to the extent Plaintiff challenges probable cause for those charges, such a challenge should be brought in Wisconsin, not in this court. That claim will be dismissed without prejudice. The limitations period for a malicious prosecution claim in Wisconsin begins on the date the complainant is acquitted, and appears to be six years. *Strid v. Converse*, 111 Wis. 2d 418, 423-24, 331 N.W.2d 350, 353-54 (Wis.1983); *see also Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d 333, 342 (Wis. App. 1983). Thus, the time during which this claim may have been pending in this court should not affect Plaintiff's ability to raise it in Wisconsin.

Any challenge to the arrest in Illinois clearly lacks merit. An arrest supported by probable cause defeats a false-arrest claim. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007). An officer may rely on information provided to him by the victim or by an eyewitness to a crime. *Id.*; *Pasiewicz v. Lake County Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001). In Plaintiff's case, as noted by the state trial court, the information possessed by the Waukegan officers, from their own investigation and from the investigation by Pleasant Prairie officers (including the physical description furnished by the victims, the positive identification of Plaintiff's photo, and the matching license plate number) supported the arrest. Plaintiff's false arrest claims are dismissed.

**Deliberate Indifference to Serious Medical Need**

Plaintiff's complaint seeks relief for a shoulder injury (Compl. at 13), but the record otherwise makes no mention of the denial of any necessary medical treatment. To the contrary, the medical records and evidence that Plaintiff himself submitted demonstrate that his injuries were not ignored: his attorney expressed an intention to seek a medical examination, jail officials provided him with

13

Tylenol on June 29, 2006, and Plaintiff was evaluated and treated by two physicians in 2007. (InterOffice Memo, Ex. A to Pl.'s Cross-Motion [55]; Compl. at 4, ¶ III(h); Pl.'s Notice of Filing to Add Med. Docs. [76] at 3, 4.) Any deliberate indifference claim is dismissed.

**Excessive Force–Defendants Ulloa and Ratzburg**

Neither Plaintiff's complaint nor his testimony at the state pretrial hearing refers to any use of force by Defendants Ulloa or Ratzburg. He testified, in fact, that neither Ulloa nor Ratzburg harmed him. (Tr. of June 13, 2007 at 22-23, 33-35, Ex. D to Def.'s 56.1.) Any allegation that Ulloa or Ratzburg used improper or coercive methods during the interrogation would not, by itself, support a § 1983 claim. *See Wallace v. City of Chicago*, 440 F.3d 421, 429 (7th Cir. 2006) ("there is [not] a free-standing due process claim whenever unfair interrogation tactics (short of those that may shock the conscience and thereby implicate the Supreme Court's substantive due process rulings) are used to obtain a confession"), *aff'd on other grounds*, *Wallace v. Kato*, 127 S. Ct. 1091 (2007); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1025 (7th Cir. 2006) (a claim of improper interrogation, such as a confession without *Miranda* warnings, does not itself give rise to a constitutional § 1983 claim for damages unless the plaintiff demonstrates that the confession was used in a criminal proceeding against him). Even if Plaintiff's pleadings could be construed to allege that a confession resulted from the interrogation, the testimony at the pretrial suppression hearing demonstrates that Ulloa and Ratzburg did not obtain any such confession by means of unfair interrogation tactics. Plaintiff's claims against Ulloa and Ratzburg about their participation in the interrogation are dismissed.

**Excessive Force–Defendant Thomas**

Plaintiff did testify to physical abuse by Defendant Thomas. Thomas argues that any claim of excessive force is barred under the doctrine of collateral estoppel. Collateral estoppel (sometimes referred to as "issue preclusion") bars the relitigation of issues already litigated and decided in a prior proceeding. The Supreme Court has held that both res judicata and collateral estoppel may bar a § 1983 suit. *Allen v. McCurry*, 449 U.S. 90, 96-97, 101 S.Ct. 411, 416 (1980) (denial of suppression

motion barred plaintiff's unlawful search claim under § 1983). "[R]es judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 95-96.

This court looks to the law of the forum state (here, Illinois) to determine the preclusive effect of a judgment of that state's courts. *Brengettcy v. Horton*, 423 F.3d 674, 683 (7th Cir. 2005). In Illinois, issue preclusion requires that: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Id.* (quoting *Bajwa v. Metro. Life Ins. Co.*, 208 Ill. 2d 414, 433, 804 N.E.2d 519, 532 (2004)). Illinois courts have also considered whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *Stevenson v. City of Chicago*, 638 F. Supp. 136, 142 (N.D. Ill. 1986) (citing *Raper v. Hazelett & Erdal*, 114 Ill. App. 3d 649, 652, 449 N.E.2d 268, 270 (1st Dist. 1983)); *see also Allen*, 449 U.S. at 101.

"The doctrine of collateral estoppel generally bars relitigation of issues that were litigated fully and decided with finality in a previous proceeding." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1020 (7th Cir. 2006). There are exceptions, however, to the preclusive effect of a prior decision under Illinois law. Specifically, "collateral estoppel is unavailable when: (1) 'additional evidence' is discovered after the prior decision; or (2) the party against whom preclusion is sought was unable to appeal the judgment in the initial action." *Id.* Furthermore, "[c]ollateral estoppel is an equitable doctrine. . . . Even when the technical conditions of the doctrine are met, collateral estoppel must not be applied to preclude an issue 'unless it is clear that no unfairness results to the party being estopped.'" *Id.* at 1022-23 (citing *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 685 N.E.2d 325, 328 (1997)); *see also Bajwa*, 208 Ill. 2d at 433, 804 N.E.2d at 532.

Defendants themselves have cited little case law on this issue, and the court's research reveals only one Illinois case that has applied collateral estoppel to preclude litigation of a § 1983 claim based upon a decision in a pretrial suppression hearing in a prior criminal case. See *Smith v. Boudreaux*, 366 Ill. App. 3d 958, 972-73, 852 N.E.2d 433, 445-46 (1st Dist. 2006) (collateral estoppel precluded litigation of a § 1983 claim of excessive force when a state criminal court previously denied a motion to suppress a confession allegedly coerced by excessive force); *see also LaBoy v. Zuley*, 747 F. Supp. 1284, 1286 (N.D. Ill. 1990) (noting that as of 1990 "an Illinois court has yet to address . . . whether a plaintiff in a civil case is barred from relitigating issues resolved in a suppression hearing in a prior state criminal case"). This court notes, however, that numerous federal courts have concluded that "collateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings." *Allen,* 449 U.S. at 102 (citing cases from the First, Second, Third, Fourth, Fifth, and Ninth Circuits); *see also Donovan v. Thames*, 105 F.3d 291, 293 (6th Cir. 1997); *Simmons v. O'Brien*, 77 F.3d 1093, 1096-97 (8th Cir. 1996); *LaBoy,* 747 F. Supp. at 1286-87; *Henderson v. Stone*, No. 87 C 2775, 1989 WL 81818, *2-4 (N.D. Ill. Jul 11, 1989), *aff'd* 930 F.2d 25 (7th Cir. 1991); *Satterly v. Louisville-Jefferson County Metro Gov't*, No. C:07-CV-710-S, 2008 WL 4127028, 6 (W.D. Ky. Sept. 4, 2008).

In *Smith*, the plaintiff filed a civil rights action, alleging that excessive force was used during an interrogation to obtain a confession. In the plaintiff's prior criminal proceedings, the trial court concluded the confession was voluntary and denied the motion to suppress it, albeit without specifically addressing whether excessive force had been used. *Smith*, 366 Ill. App. 3d at 961, 852 N.E.2d at 436. In an action under § 1983 alleging excessive force, plaintiff asserted that he had new evidence of wrongdoing in his case and submitted newspaper articles reporting allegations by others of abuse by the Chicago officers who interrogated the plaintiff. Citing the three factors listed above, and finding that the plaintiff's newspaper articles did not constitute new evidence to warrant relitigation, the *Smith* court found that collateral estoppel precluded the plaintiff's excessive force claim. *Id.* at 973,

852 N.E.2d at 445-46.

In the case before this court, two of the collateral estoppel factors certainly apply: Plaintiff's prior criminal proceeding resulted in a final judgment, and Plaintiff was a party to the proceeding. It is also clear that Plaintiff presented the issue of excessive force at the pretrial hearing, and that Judge Foreman found that Plaintiff's allegations of excessive force were not credible. (Tr. of June 15, 2007 at 12-15, Ex. E to Def.'s Rule 56.1.) Judge Foreman's finding appears sufficient to constitute a binding determination on the excessive force issue. *Cf. Smith*, 366 Ill.App.3d at 973, 852 N.E.2d at 445-46.

Plaintiff has, however, submitted evidence in this court that was not presented at the state pretrial hearing: a letter from his sister, suggesting that Thomas had been disciplined on an earlier occasion for conduct similar to that of which Plaintiff complains (Attach. to Pl.'s Cross-Motion [81]); Plaintiff's June 28, 2006 complaint of police brutality, in which the officer who took the complaint recorded his observation of "slight swelling" on Plaintiff's cheek and "slight redness" on his head (Ex. F to Pl.'s Cross-Motion [55]); and two physician reports from June and October 2007, stating that Plaintiff "has contused his left shoulder and now has a frozen shoulder." (Pl.'s Notice of Filing to Add Med. Docs. [76].) Defendants have not addressed whether this evidence could have been presented at the suppression hearing or how this evidence affects the application of collateral estoppel.

Accordingly, Thomas' motion for summary judgment is denied without prejudice to another motion for summary judgment addressing these issues.

**Unlawful Search**

Also under the doctrine of collateral estoppel, Thomas and Ratzburg seek summary judgment on Plaintiff's claims of an unlawful search. As stated above, two collateral estoppel factors are satisfied: Plaintiff's prior criminal proceeding resulted in a final judgment and Plaintiff was a party to the proceeding. It is less clear, however, that Judge Foreman's comments concerning the validity of the search constituted a formal ruling on that issue and whether Plaintiff had a full and fair opportunity to litigate the issue at the suppression hearing. Officer Thomas testified at the suppression hearing

that no evidence was found during the search. (Tr. of Jan. 10, 2007 at 85, Ex. C to Def.'s 56.1 ("Did you find any evidence inside the house?" "No, we did not.").) There is thus no reason for Plaintiff's attorney in the state criminal proceedings to have challenged the search, and it appears there was no motion to suppress relating to it. Both Thomas and Ratzburg testified that Plaintiff's wife consented to the search, and Plaintiff's attorney cross-examined Ratzburg about the issue (*Id.* at 84-86, 120, 132-33), but Plaintiff's wife did not testify. Plaintiff has presented an affidavit from his wife dated October 2, 2007, in which she states that she did not consent to the search (Attach. to Pl's Cross-Motion [81]), which Defendants have not yet addressed.

Thomas's and Ratzburg's motions for summary judgment on the illegal search issue are denied. The court invites Defendants to submit a renewed motion, addressing whether the issue was presented to and decided by the state trial court, whether Plaintiff had a full and fair opportunity to litigate the issue, and whether the affidavit of Plaintiff's wife affects the applicability of collateral estoppel on this claim. The court recognizes that as nothing was seized from Plaintiff's home, he has suffered no actual damage, but "[t]he law recognizes that law-abiding citizens can sue and recover general (or presumed) damages for a Fourth Amendment violation, even without proof of injury." *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001); *see also Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 859 (7th Cir. 1999) (error to dismiss unlawful search claim merely because there was no seizure of evidence); *Garrett v. Clarke*, 147 F.3d 745, 746 (8th Cir. 1998) (§ 1983 damages for an illegal search allowed even when the plaintiff was not present during the search).

**Heck v. Humphrey, 512 U.S. 477 (1994)**

In response to the court's request, Defendants offered additional submissions on the question of whether *Heck v. Humphrey* bars this lawsuit. Under *Heck*, a § 1983 plaintiff may not proceed with a claim, if a favorable ruling "would necessarily imply the invalidity of his conviction or sentence" unless and until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. In response, Defendants acknowledged that *Heck* does not apply, at least with respect to the claims involving the interrogation and search. Defendant Thomas stated during the state pretrial hearing that no evidence was seized during the search of Plaintiff's house. (Tr. of Jan. 10, 2007 at 85, Ex. C to Def.'s 56.1.) *Heck* thus likely does not bar litigation of the illegal search claim.

The claim of excessive force may stand on a different footing. The court notes that Thomas testified at the suppression hearing that Plaintiff did not confess during the two-hour interrogation on June 28, 2006 (*id.* at 92), and all witnesses testified that Plaintiff repeatedly denied his involvement in the robberies. So far as the court is aware, the only arguably incriminating statement was Plaintiff's statement, on seeing surveillance photographs, "Just take me to jail. You got me on video." (*Id.* at 41, 78, 104.) Plaintiff's motion to suppress does, however, assert that he made incriminating statements as a result of physical beatings. (Mot. to Suppress at 1, Ex. B to Def.'s 56.1.) Whether there was a confession, and whether it or any incriminating statements were used against Plaintiff is unclear from the record. Nor is the court certain whether a favorable ruling on Plaintiff's § 1983 excessive force claim would call into question the validity of the conviction.

An appeal of Plaintiff's Lake County conviction in 06 CF 2644 is currently pending before the Illinois Appellate Court, Second District, and a case arising out of the Pleasant Prairie robbery remains pending in Wisconsin. Before this case proceeds further, the court will expect the parties to advise whether a favorable ruling here would affect either the Illinois conviction or the Wisconsin charges. At a minimum, the parties should state whether the interrogation resulted in a confession, and whether the confession, any incriminating statements, or evidence retrieved from the search of Plaintiff's residence (if any) was used or is being used against Plaintiff in the criminal prosecutions. If a favorable ruling in this case would affect either criminal proceeding, the parties may request a stay of this case pending the resolution of Plaintiff's state cases.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss [36] is granted; their motions for summary judgment [34, 69] are granted in part and denied in part; and Plaintiff's cross motions for summary judgment [55, 81] are denied. All claims against Defendant Ulloa are dismissed. Andy Ulloa is dismissed as a Defendant. Plaintiff's claims of deliberate indifference to a serious medical need are dismissed. His claim of false arrest for the Illinois armed robbery offense is dismissed. His claim of false arrest or malicious prosecution for the Wisconsin armed robbery charges is dismissed without prejudice. Plaintiff's excessive force claim against Ratzburg is dismissed.

Plaintiff may proceed on his claim of excessive force against Defendant Thomas and his illegal search claim against Defendants Thomas and Ratzburg, but the court invites Thomas and Ratzburg to renew their motions for summary judgment, addressing the unresolved issues discussed in this opinion. Thomas and Ratzburg are directed to answer the complaint or otherwise plead within 30 days. Plaintiff's motion for appointment of counsel [64] is denied without prejudice.

Date: September 26, 2008                ENTER:

                                                                                                                                                                             _____
                                                                                                  REBECCA R. PALLMEYER
                                                                                                  United States District Judge